UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

**EDWARD J. RYKER,**

    **Appellant,**

v.

**DAVID and DENISE CURRENT,**

    **Appellees.**

05-CV-2977 (WJM)

**OPINION**

**HON. WILLIAM J. MARTINI**

Dean G. Sutton, Esq.
18 Green Road
Post Office Box 187
Sparta, New Jersey 07871

    *(Attorney for Appellant)*

Paul Pflumm, Esq.
Middlebrooks Shapiro Nachbar & Pflumm, P.C.
140 Eagle Rock Avenue
Roseland, New Jersey 07068-0609

    *(Attorney for Appellees)*

**MARTINI, U.S.D.J.:**

    This matters comes before the Court on Appellant Edward J. Ryker's appeal from the United States Bankruptcy Court's Order Denying in Part, and Allowing in Part, Appellants' Motion to Reduce the Proof of Claim filed by Appellees David and Denise Current.  There was no oral argument.  Fed. R. Civ. P. 78.  For the following reasons, the Bankruptcy Court's decision is **AFFIRMED IN PART** and **REMANDED** for further consideration.

## BACKGROUND

**I.     Facts**

Appellant Edward J. Ryker ("Ryker") partially owned a piece of commercial property located in Stillwater, New Jersey (the "Property"). David and Denise Current ("the Currents") held a first priority mortgage on the Property. Ryker defaulted under the mortgage and the Currents obtained a foreclosure judgment in the amount of $219,084.26.

The parties then entered into a forbearance agreement (the "Forbearance Agreement") providing that the Currents would stay a foreclosure sale if Ryker satisfied the debt. In addition, the Forbearance Agreement required Ryker to pay the Currents' attorneys' fees "through the completion of the matter." Ryker, however, defaulted under the Forbearance Agreement and a foreclosure sale occurred on October 25, 1999. The Currents were the only bidders at the sale and, as a result, purchased the Property. However, because they already received $169,605.40 from Ryker under the Forbearance Agreement, they paid only the difference, i.e., $49,478.86.

On November 3, 1999, Ryker filed for Chapter 13 bankruptcy. The Currents moved to keep the Property out of Ryker's estate and for relief from the automatic stay. In response, Ryker cross-moved to nullify the foreclosure sale as a fraudulent transfer under 11 U.S.C. § 548(a)(1)(B). The Bankruptcy Court denied the Currents' motion without prejudice, but allowed Ryker to file an adversary proceeding setting forth his fraudulent transfer claim. In response, Ryker re-filed his complaint and the Bankruptcy Court held that the foreclosure sale constituted a fraudulent transfer. *See Ryker v. Current (In re Ryker)*, 272 B.R. 602 (Bankr. D.N.J. 2002) (hereinafter "*Ryker I*"). As a result, the Bankruptcy Court vacated the sale. *Id.* at 612.

The Currents appealed the Bankruptcy Court's order. On appeal, the District Court

noted, *sua sponte,* that Ryker potentially lacked standing to attack the sale as a fraudulent transfer.  *See Ryker v. Current (In re Ryker)*, 301 B.R. 156, 159-62 (D.N.J. 2003) (hereinafter "*Ryker II*").  The District Court then remanded the case to the Bankruptcy Court to determine the issue of standing.  *Id.* at 162.  On remand, the Bankruptcy Court held that Ryker did not have standing to avoid the sale as a fraudulent transfer.  *Ryker v. Current (In re Ryker)*, 315 B.R. 664, 674 (Bankr. D.N.J. 2004) (hereinafter "*Ryker III*").  However, the Bankruptcy Court held that the Chapter 13 trustee could ratify Ryker's actions and avoid the sale. *Id.*

The trustee ratified Ryker's actions and his Chapter 13 plan was confirmed on November 4, 2004.[1]  The Currents submitted a proof of claim to the Bankruptcy Court on November 21, 2004 for $96,397.39 in post-petition attorney's fees.  The fees stem mainly from filing the motion for relief from the automatic stay and for litigating *Ryker I*, *Ryker II*, and *Ryker III*.  In response, Ryker filed a motion to reduce the Currents' claim to the balance owed under the foreclosure judgment, i.e., $49,478.86.  Ryker maintains that, after subtracting amounts already awarded to the Currents, they are entitled only to $495.38 in attorneys' fees.[2]

## II.     The Bankruptcy Court's Decision

---

[1] Pursuant to an order of the Bankruptcy Court, the property was sold on April 16, 2001 for $249,000.00.  On July 2, 2001, the Bankruptcy Court allowed $55,000.00 of the sale proceeds to be paid to the Currents with the disposition of the remaining funds to be decided after resolution of the pending litigation between the parties

[2] Ryker reasons that on the date of the sale, October 25, 1999, he was entitled to a credit of $169,605.40 against the sum due of $219,084.86.  That left an amount of $49,478.86.  Then, Ryker adds to that sum interest in the amount of $6,016.52.  This results in a total of $55,495.38.  Since the Currents already received $55,000.00, Ryker argues that they are only entitled to a claim of $495.38.  In response, the Currents argue that the Bankruptcy Court had to add $151,397.00 in attorney's fees to that figure.  When you subtract $55,000.00 from that number, the total becomes $96,397.39, which the Currents claim they are presently owed.

In an oral opinion, the Bankruptcy Court denied in part, and allowed in part, Ryker's motion to reduce the Currents' proof of claim.  First, the Bankruptcy Court analyzed the Forbearance Agreement and held that it clearly provides for the payment of the Currents' post-petition attorneys' fees.  Next, the Bankruptcy Court examined whether the fees were reasonable under 11 U.S.C. § 506(b) ("Section 506(b)").  After applying federal bankruptcy law, the Bankruptcy Court held that a portion of the fees were "reasonable," i.e., $71,027.39, while a portion was "unreasonable," i.e., $25,370.00.  Finally, the Bankruptcy Court held that, under Section 506(b) and 11 U.S.C. § 502(b) ("Section 502(b)"), those fees deemed reasonable are treated as a secured claim while those fees deemed unreasonable are treated as an unsecured claim.  The Currents appeal this order.

## DISCUSSION

**I.      Standard Of Review**

Pursuant to Rule 8013 of the Bankruptcy Code, this Court may "affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings."  Fed. R. Bankr. P. 8103.  "In bankruptcy cases, the district court serves an appellate function."  *J.P. Morgan Bank v. Tamis*, No. 07-737, 2005 U.S. Dist. LEXIS 28102, at *8 (D.N.J. Nov. 16, 2005).  The Court thus reviews findings of fact under a clearly erroneous standard and legal conclusions under a de novo standard.  *See* Fed. R. Bankr. P. 8103; *Donaldson v. Bernstein*, 104 F.3d 547, 551 (3d Cir. 1997); *Chemetron Corp. v. Jones*, 72 F.3d 341, 345 (3d Cir. 1995).  A factual finding is clearly erroneous when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  *In re Cellnet Data Sys., Inc.*, 327 F.3d 242, 244 (3d Cir. 2003) (citing *United States v. United States*

*Gypsum Co.*, 333 U.S. 364 (1948)). Where a matter presents mixed questions of law and fact, it is appropriate to apply the relevant standard to each component of the issue. *Chemetron*, 72 F.3d at 345.

## II.     11 U.S.C. § 1322(e) Does Not Apply Because Ryker's Chapter 13 Plan Does Not Propose To "Cure a Default."

Ryker first argues on appeal that the Bankruptcy Court erred in analyzing the Currents's fee request under Section 506(b). He argues that 11 U.S.C. § 1322(e) ("Section 1322(e)") applies instead. Ryker contends that, under Section 1322(e), the Court must disallow the Currents' legal fees and costs "because the amount necessary to cure his default must be determined under New Jersey law," which Ryker argues either limits or disallows the Currents' fees in their entirety.[3] (Pet. Br. at 6). The first issue, therefore, is whether Section 1322(e) applies in this case at all.

When determining whether a statute applies in a particular case, the starting point is the language of the statute itself. *See In re Harris*, 94 B.R. 832, 835 (D.N.J. 1989). Section 1322(e) provides:

> Notwithstanding ... section []506(b) ... [I]f it is proposed in a plan to cure a default, the amount necessary to cure the default, shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law.

11 U.S.C. § 1322(e). Thus, "when a debtor seeks to cure a prepetition payment default over the life of a Chapter 13 plan ... the amount of arrearage must be 'determined in accordance with the

---

[3] In particular, Ryker argues that Section 1322(e) requires the Court to apply New Jersey Court rule 4:42-9(a)(1), which limits the amount of fees recoverable from a mortgagor. He contends that, since this case involves a mortgage foreclosure, the New Jersey court rule applies to limit the Currents' fee request. In addition Ryker contends that the Currents' fee request is unreasonable under New Jersey law.

agreement and applicable non bankruptcy law.'" *In re Plant*, 288 B.R. 635, 641 (Bankr. D. Mass 2003) (quoting Section 1322(e)). Accordingly, Section 1322(e) will only apply if Ryker's Chapter 13 plan proposes to cure a default. *See id.*

Here, Ryker's plan did not propose to cure a default. Instead, the plan expressly aimed to pay the Currents' "claim" after certain priority payments were made to other debtors under the plan. *See In re Ryker* (Chapter 13 Plan) (Bankr. D.N.J. Dec. 27 1999). The plan described the Currents' claim as follows:

> [The Currents] are secured by a 1st mortgage which has been merged into a foreclosure judgment in the amount of $60,000.00 on the debtor's business.... The Claim is to be paid as follows: The entire allowed amount due as of the date of Confirmation of the Plan will be paid in full from the sale of the property. [The Currents] will retain its lien on the property until satisfied pursuant to this Plan. Insurance will be maintained until the property is sold.

*Id.* Notably, Ryker's plan does not propose to cure amounts due under the mortgage, which had already merged into the foreclosure judgment, nor does it propose to make any payments under the Forbearance Agreement. *See In re Hatala*, 295 B.R. 62, 64 (Bankr. D.N.J. 2003) (applying Section 1322(e) where a debtor's Chapter 13 plan "proposed to cure the arrears on [a creditor's] mortgage by monthly payments to the trustee over 60 months."); *see also In re Plant*, 288 B.R. 635, 641 (Bankr. D. Mass. 2003); *In re Trabal*, 254 B.R. 99, 101 (Bankr. D.N.J. 2000); *cf. Tavella v. Golden Nat'l Mort. Co. (In re Tavella)*, 191 B.R. 637, 641 (E.D. Pa. 1996) (Bankr. E.D. Pa. 1996) (citing *Appeal of Capps*, 836 F.2d 773, 777 (3d Cir. 1987) ("Cure by its very nature assumes a regime where debtors reinstate defaulted debt contracts in accordance with the conditions of their contracts.")). Instead, the plan proposes to pay the Currents' claim, which was secured by a mortgage that was merged into a foreclosure judgment in the amount of

$60,000. Accordingly, since Ryker's plan does not propose to cure a pre-petition default, the Bankruptcy Court did not err in determining that Section 1322(e) is inapplicable in this case.[4]

## II.     The Currents' Entitlement To Attorneys' Fees Under Section 506(b).

Section 506(b) allows for the awarding of attorneys' fees and costs as part of an oversecured creditor's allowed secured claim. *See* 11 U.S.C. § 506(b). Specifically, this section provides:

> To the extent that an allowed secured claim is secured by property the value of which ... is greater than the amount of such claim, there shall be allowed to the holder of such claim ... reasonable fees [and] costs ... provided for under the agreement under which such claim arose.

*Id.* In general, for attorneys' fees and costs to be part of an allowed secured claim under this section, a creditor must be oversecured and the charges must be: (1) provided for under the agreement under which such claim arose; and (2) reasonable.[5]  *See* 4 *Collier on Bankruptcy* P 506.04[3] (15th ed. rev. 2005); *1095 Commonwealth Corp. v. Citizens Bank of Ma. (In re 1095 Commonwealth Corp.)*, 236 B.R. 530, 535 (D. Mass. 1999); *In re Stanwood Devries, Inc.*, 72 B.R. 140, 142 (D.N.J. 1987).

---

[4]The Currents argue that Ryker waived the issue of whether Section 1322(e) applies in this case because he failed to raise it before the Bankruptcy Court. This is incorrect. Ryker repeatedly referred to *In re Hatala* as controlling precedent during the bankruptcy court proceedings. Since the central holding of *In re Hatala* is that New Jersey's court rule regarding foreclosures applies under Section 1322(e) to limit attorneys' fees in foreclosure proceedings, Ryker clearly raised the issue before the Bankruptcy Court.

Furthermore, Ryker argues that the Court should follow the Third Circuit's unpublished decision in *Smiriglio v. Hudson United Bank*, 98 Fed. Appx. 914 (3d Cir. 2004), which held that Section 506(b) "has itself been superseded by [Section 1322(e)] – at least in cases ... involving fees included in a claim for arrears." The court in *Smiriglio*, though, did not examine whether the debtor's Chapter 13 plan proposed to cure a default. Therefore, this case is distinguishable.

[5]Ryker does not contest the oversecured status of the Currents' claim.

Ryker argues on appeal that the Bankruptcy Court committed two errors under Section 506(b). First, Ryker contends that the Bankruptcy Court incorrectly determined that the Forbearance Agreement provides for the payment of the Currents' attorneys' fees. Second, he argues that the Bankruptcy Court erred in determining the reasonableness of the Currents' attorneys' fees. We will examine these issues in turn.

### A. The Bankruptcy Court Did Not Err In Determining That The Forbearance Agreement Provides For The Payment Of The Currents' Attorneys' Fees.

Ryker argues that, under the terms of the Forbearance Agreement, he does not have to pay the Currents' legal fees. According to Ryker, the Forbearance Agreement only requires him to pay such fees if he satisfies all of his obligations under the Forbearance Agreement and the foreclosure sale is cancelled. Ryker argues that, since the foreclosure sale was never canceled, his obligation to pay attorneys' fees never commenced.

On this point, the Bankruptcy Court did not err. First, Section 3(h) of the Forbearance Agreement, which governs the payment of the Currents' attorneys' fees, provides:

> Simultaneously herewith [Ryker] will reimburse [the Currents] for all costs and attorney's fees incurred through the date of this Agreement in the amount of $7,575.06 (approximate). [Ryker] is also obligated and continues to be obligated to pay any additional costs or attorney's fees incurred by [the Currents] through the completion of this matter *as a condition of the final cancellation of the Sheriff's Sale* on or before May 29, 2003.

(emphasis added). Under this section, Ryker's obligation to pay the Currents' attorneys' fees is a condition to the Currents' agreement to stay the foreclosure sale. The forbearance agreement does not, as Ryker contends, condition his obligation to pay attorneys' fees on the cancellation of the sale.

Second, Ryker's argument is contradicted by another section of the Forbearance Agreement. In particular, Section 7 provides:

> If [Ryker] fails to satisfy all conditions set forth [in the Forbearance Agreement] or if an event of default occurs ... the forbearance aspects of this Agreement shall automatically terminate and the [Currents] shall have the right to pursue at [their] discretion *any and all rights* to which [they are] entitled pursuant to ... this Agreement....

(emphasis added). This provision clearly expresses the parties' intent to allow the Currents to pursue all of their rights under the Forbearance Agreement, including the receipt of attorneys' fees, should Ryker default under the agreement and a foreclosure sale occur.

Finally, under Ryker's construction of the Forbearance Agreement, a default by him would initiate a foreclosure sale and thereby prevent the triggering of his obligation to pay attorneys' fees. This would, in turn, create a scenario where Ryker would actually benefit by defaulting under the agreement. This cannot be what the parties intended. Accordingly, the Bankruptcy Court did not err in determining that the Currents' attorneys' fees were allowed under the Forbearance Agreement.

### B. The Bankruptcy Court Did Not Err In Its Determination Of The Reasonableness Of The Currents' Fee Request.

Ryker argues that the Bankruptcy Court erred in its determination of the reasonableness of the Currents' attorneys' fees by: (1) improperly failing to consider whether such fees were reasonable under state law; and (2) incorrectly determining the reasonableness of Currents' fees under federal bankruptcy law. We consider each of these points in turn.

#### 1. Reasonableness is Determined Solely Under Federal Law.

Under Section 506(b), an oversecured creditor is entitled to attorneys' fees provided in a

pre-petition contract if the fees are "reasonable." 11 U.S.C. § 506(b). There is a split in authority, however, over the issue of whether state or federal law governs the determination of the reasonableness of attorneys' fees under Section 506(b). *See* 4 *Collier on Bankruptcy* P. 506.4[3][a][i] (15th ed. rev. 2005). Some courts read a requirement into Section 506(b) that the attorneys' fees must also be reasonable under state law pursuant to Section 502(b)(1), which requires that a claim is allowable only if it is enforceable under "applicable law."[6] *See In re Morse*, *Tool, Inc.*, 87 B.R. 745, 748 (Bankr. D. Mass. 1988). We reject this line of reasoning.

In enacting Section 506(b), Congress explicitly "intended to permit enforcement of attorney's fee provisions even though state law might not allow attorney's fees." 4 *Collier on Bankruptcy* P 506.04[3][a][i].[7] Numerous courts adopt this view. *See Kord Enter. v. California*

---

[6]Section 502(b)(1), which concerns the allowability of claims, states:

> (b) [T]he court, after notice and a hearing, shall determine the amount of such claim ... and shall allow such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that–
>> (1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or *applicable law*....

11 U.S.C. § 502(b)(1) (emphasis added).

[7]As *Collier* notes, this was clearly evident in the last pronouncement by the House and Senate to the effect that:

> Section 506(b) of the House amendment adopts language contained in the Senate amendment and rejects language contained in H.R. 8200 as passed by the House. If the security agreement between the parties provides for attorneys' fees, it will be enforceable under title [11], *notwithstanding contrary law*, and is recoverable from the collateral after any recovery under section 506(c).

*Id.* (citing 124 Cong. Rec. H11, 095 (daily ed. Sept. 28, 1978; S17,411 (daily ed. Oct. 6, 1978)) (emphasis added). Furthermore, the House version of this law allowed fees "to the extent

*Commerce Bank (In re Kord Enter. II)*, 139 F.3d 684, 689 (9th Cir 1998); *Unsecured Creditors Committee v. Walter E. Helller & Co. Southeast, Inc. (In re K.E. Stephenson Supply Co.)*, 768 F.2d 580, 585 (4th Cir. 1985); *In re Evans*, 322 B.R. 429, 435 n.2 (Bankr. W.D. Wa. 2005); *In re Center*, 282 B.R. 561, 565-66 (Bankr. D.N.H. 2002); *In re 1095 Commonwealth Corp.*, 236 B.R. at 536; *In re F.B.F. Indus., Inc.*, No. 91-24613, 1995 Bankr. LEXIS 1645, at *12 (Bankr. E.D. Pa. Nov. 15, 1995); *SEC v. M.S. Wein & Co., Inc. (In re M.S. Wein & Co., Inc.)*, 54 B.R. 183, 185 (Bankr. D.N.J. 1985) (citing *ITT Industrial Credit Co., v. Scarboro, (In re Scarboro)*, 13. B.R. 439 (M.D. Ga. 1981)). As the reasonableness of the Currents' attorneys' fees is determined solely under federal law, we need not reach the issue of whether the fees are unreasonable under state law. Accordingly, the Bankruptcy Court did not err.

>  **2.  The Bankruptcy Court Did Not Err In Determining The Reasonableness Of The Currents' Request For Relief From The Automatic Stay And For Litigating *Ryker I*, *Ryker II*, And *Ryker III*; However, The Case Is Remanded For A Determination Of The Reasonableness Of The Fees Expended For Appealing The Denial Of Relief From The Automatic Stay.**

Ryker also argues on appeal that the Bankruptcy Court made two errors regarding the reasonableness of the Currents' attorneys' fees. First, Ryker argues that the Currents acted unreasonably in litigating this matter and, therefore, their legal fees are unreasonable. Second, Ryker contends that the Bankruptcy Court failed to consider certain factors in determining the reasonableness of the Currents' fee request.

"Fee awards are reviewed for an abuse of discretion, which can occur 'if the judge fails to apply the proper legal standard or to follow proper procedures in making the determination, or

---

collectible under applicable law." H.R. 8200, 95th Cong. (1977). The Senate version, which was enacted as the current Section 506(b), made no reference to "applicable law."

bases an award on findings of fact that are clearly erroneous.'" *Zolfo, Cooper & Co. v. Sunbeam-Oster Co.*, 50 F.3d 253, 258 (3d Cir. 1995) (quoting *Electro-Wire Prods., Inc.v. Sirotte & Permutt, P.C. (In re Prince)*, 40 F.3d 356, 359 (11th Cir. 1994). The reasonableness of a fee request "has two facets: (1) the itemized fees themselves must be reasonable, and (2) the creditor's actions must be reasonable." *In re West Elec., Inc.*, 158 B.R. 37, 40 (Bankr. D.N.J. 1993). To determine the reasonableness of a creditor's actions, the Court must consider "whether the creditor took the kind of reasonable actions similarly situated creditors would have taken, and whether such actions and fees were outside the range so as to be deemed unreasonable." *Id.*[8] While attorneys' fees will not be denied solely because legal actions taken by a secured creditor are unsuccessful, "a creditor must not impede the debtor's reorganization by saddling the debtor with attorney's fees and expenses." *Id.* at 41.

As noted earlier, the Currents expended legal fees in two ways. First, the Currents moved for relief from the automatic stay and to keep the Property out of Ryker's estate. Second, they expended fees for litigating *Ryker I*, *Ryker II*, and *Ryker III*. The Bankruptcy Court held that both of these litigation tactics were reasonable, in part, because the foreclosure sale occurred

---

[8]To determine the range and reasonableness of the actions themselves, courts employ the following twelve factors: (1) time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstance; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *In re West Elec., Inc.* 158 B.R. at 42 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).

before Ryker filed for bankruptcy.[9] As such, the Bankruptcy Court found that the Currents reasonably believed that they held some right to the property, in general, and therefore could eventually realize satisfaction of their entire secured claim and receive the proceeds from the sale of the Property.  Therefore, according to the Bankruptcy Court, the Currents' continued litigation in this matter was reasonable.  Ryker disagrees with this holding.  He claims that, since his plan provided for the Currents' claim to be paid in full, there was no need for them to expend time and money litigating their claims.

We see no error in the Bankruptcy Court's holding.  As the Bankruptcy Court correctly held, the Currents reasonably believed that, since they already purchased the property pursuant to a foreclosure sale prior to Ryker's filing for Chapter 13 protection, they possessed some interest in the property.  Furthermore, and more importantly, any steps taken by the Currents regarding *Ryker I*, *Ryker II*, and *Ryker III*, were the result of actions taken by Ryker.  He initiated the adversary proceeding that resulted in *Ryker I*, *Ryker II*, and *Ryker III*, and the only actions taken by the Currents were to respond to Ryker's motion to nullify the foreclosure sale and to appeal the unfavorable ruling on that motion to the District Court.  The Currents's cannot be penalized for defending themselves from certain actions taken by Ryker.  *See Mfr's Nat'l Bank v. Auto Specialties Mfg. Co.*, 18 F.3d 358, 362 (6th Cir. 1994) (holding that a secured creditor may incur attorneys' fees compensable under Section 506(b) when it responds to litigation commenced by

---

[9]The Bankruptcy Court also held that the Currents' actions were reasonable because of novel issues raised by Ryker in seeking to avoid the foreclosure sale under Section 548.  (See Tr. at 29).

the debtor); *see also In re Cummins Util., L.P.*, 279 B.R. 195, 205 (N.D. Tex. 2002).[10] Accordingly, the Bankruptcy Court did not err in determining that the fees expended by the Currents for filing for relief for the automatic stay and seeking to keep the Property out of Ryker's estate, along with litigating *Ryker I*, *Ryker II*, and *Ryker III,* were reasonable.

Ryker, however, also takes issue with the Currents' appeal of the Bankruptcy Court's denial of the Currents' motion for relief from the automatic stay. This appeal was taken by Current after the Bankruptcy Court rendered its decision, via telephone conference, regarding whether there was adequate notice of the foreclosure sale. Notably, during the telephone conference, the Bankruptcy Court did not reach the issue of whether "cause" existed for the automatic stay, nor whether the property was part of Ryker's estate. *See Ryker v. Current (In re Ryker)*, No. 00-1984, slip. op. at 4 (D.N.J. June 29, 2000). On appeal, the District Court held that the Bankruptcy Court's judgment was not "final" pursuant to 28 U.S.C. § 158(a) and therefore the appeal was improper. *See id.* at 6-7.

From reading the Bankruptcy Court's oral opinion, there is no indication that the court considered the reasonableness of the fees associated with the Currents' appeal of the denial of relief from the automatic stay. The determination of the reasonableness of such fees might involve a factual determination, which would be improper for this Court to make on appeal. *See Ins. Co. of N. America v. Cohn (In re Cohn)*, 54 F.3d 1108, 1118 (3d Cir. 1995) (holding that

---

[10]Ryker undertakes great efforts to analogize the instant case to *In re West Electronics*, in which Judge Ginden held that a secured creditor who filed a series of unsuccessful motions was not entitled to attorneys' fees. *See In re West Elec., Inc.*, 158 B.R. at 42. This case is inapposite, however, as the only motion filed by the Currents was to keep the property out of the estate and for relief from the stay. *See* supra note 10. Thereafter, every action taken by them was in response to arguments raised by Ryker.

where the Bankruptcy Court failed to make sufficient factual findings the proper response is to remand).  Accordingly, this matter is remanded to the Bankruptcy Court for a determination of the reasonableness of the Currents' legal fees related to the appeal of the Bankruptcy Court's denial of relief from the automatic stay.

      **b.**  **The Bankruptcy Court Did Not Err In The Remainder Of Its Reasonableness Analysis.**

Ryker also argues on appeal that the Bankruptcy Court erred in its reasonableness analysis because it failed to consider: (1) whether the Currents conducted themselves as similar creditors would; (2) whether the amount of legal fees sought were reasonable in light of the size of the indebtedness; and (3) that the Currents never achieved favorable results in the litigation. The Bankruptcy Court did not err on these points.

First, the Bankruptcy Court explicitly noted the novel arguments raised in this matter and that the Foreclosure Sale already occurred, thereby distinguishing this case from those involving other secured creditors.  Second, Ryker's assertion that the Bankruptcy Court failed to weigh the amount of legal fees sought relative to the size of the indebtedness is incorrect.  A review of the Bankruptcy Court proceedings indicates that the court expressly considered this factor.  (*See* Tr. of Record at 21).  Finally, the Bankruptcy Court did consider the results obtained by the Currents, but expressly framed them in light of the fact that the Currents were mainly defending proceedings brought by Ryker and that the Currents reasonably believed that they retained an interest in the Property which could be satisfied through successful litigation.

Accordingly, the Bankruptcy Court did not err in performing the remainder of its reasonableness analysis.

**D.     The Bankruptcy Court Did Not Err In Treating The Unreasonable Attorneys' Fees As An Unsecured Claim.**

As noted before, the Bankruptcy Court applied *In re Welzel*, 275 F.3d 1308 (11th Cir. 2001) to hold that the reasonable attorneys' fees should be treated as a secured claim while the unreasonable attorneys' fees should be treated as an unsecured claim. Ryker argues that this was incorrect. According to him, *In re Welzel* is inapplicable to the present matter because that case dealt only with pre-petition attorneys' fees, while this case involves post-petition attorneys' fees. Therefore, Ryker urges that the only question the Bankruptcy Court should have ruled upon was whether or not the post-petition fees were reasonable under Section 506(b). *See, e.g., In re Gladhill*, 164 F.3d 1338, 1340 (10th Cir. 1999) ("Interest, fees, costs, and charges that accrue after the petition is filed, or post-petition, are permitted only if authorized under [Section] 506(b).").

Without reaching the issue of whether or not *In re Welzel* applies to cases involving both pre-petition and post-petition attorneys' fees, we hold that the Bankruptcy Court did not err for the simple fact that the attorneys' fees at issue in this case were not post-petition in nature. The attorneys' fees here arose pre-petition, when the parties signed the Forbearance Agreement. The key question before the Court is not whether the attorneys' fees would actually be *paid* to the Currents post-petition, but when the *obligation* to pay those attorneys' fees arose. *See Blair v. Bank One, N.A.*, 307 B.R. 906, 911 (N.D. Ill. 2004) ("[A]lthough the triggering event for the fees occurred post-petition, the obligation ... was incurred pre-petition."); *see also Woburn Assoc. v. Kahn (In re: Hemingway Transp., Inc.)*, 954 F.2d 1, 22 (1st Cir. 1992); *In re New Power Co.*, 313 B.R. 496, 507 (Bankr. N.D. Ga. 2004). Since the obligation to pay the Currents' attorneys'

fees arose in a pre-petition contract (i.e., the Forbearance Agreement), the holding of *In re Welzel* applies and the Bankruptcy Court subsequently did not err in bifurcating the attorneys' fees into a secured and unsecured claim.

### CONCLUSION

For the foregoing reasons, the Bankruptcy Court's Order Denying in Part and Allowing in Part Ryker's Motion to Reduce the Currents' Proof of Claim is **AFFIRMED IN PART** and **REMANDED** to the Bankruptcy Court for further determination regarding the reasonableness of the Currents' request for attorneys' fees associated with their appeal of the denial of their motion for relief from the automatic stay.  An appropriate order accompanies this opinion.

s/William J. Martini

**Dated:** February 16th, 2006

**William J. Martini, U.S.D.J.**